RENDERED:  JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0406-MR

JOSHUA COOLEY                                APPELLANT

                     APPEAL FROM BOYLE CIRCUIT COURT
v.              HONORABLE DOUGLAS BRUCE PETRIE, JUDGE
                        CASE NO. 16-CI-00240

ASHLEY COOLEY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE:  Joshua Cooley ("Joshua") appeals *pro se* from the February 28, 2025 order of the Boyle Family Court, granting in part and denying in part his motion to alter, amend, or vacate its order entered on April 12, 2024.[1]  The

---

[1] Joshua filed a second appeal with this Court, No. 2026-CA-0181, regarding an order entered by the family court on January 14, 2026, denying his motion to alter, amend, or vacate a December

underlying litigation concerns the ongoing disputes between Joshua and his former wife, Ashley Cooley ("Ashley"), over custody and timesharing of their two minor children. Upon careful review, we affirm.

Before turning to the merits of the appeal, we note that Joshua's brief does not comply with Kentucky Rules of Appellate Procedure ("RAP") 32(3) and RAP 32(A)(4). RAP 32(A)(3) requires an appellant's opening brief to contain "[a] **statement of the case** consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal[.]" Kentucky's Basic Appellate Practice Handbook describes the statement of the case as the "story" of the case, setting out the facts and the procedural events the judges need to know in order to understand the case. Joshua's brief does not contain such a narrative, which means that his arguments lack any context.

RAP 32 (A)(4) requires that a brief contain "[a]n **argument** . . . with ample references to the specific location in the record[.]" "Each reference in a brief to a segment of the designated official recording shall set forth the letters 'VR' and the month, day, year, hour, and minute (or second if necessary) at which the reference begins as recorded." RAP 31(E)(4). One of Joshua's main allegations of error is that an order drafted by opposing counsel did not reflect the

---

19, 2025, order which denied Joshua's motion to alter, amend, or vacate a September 27, 2024, order. The second appeal is still pending.

proceedings of a hearing conducted on March 29, 2024, but he provides no specific citations to the video record of that hearing.

"It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Similarly, it is not our function nor our responsibility to create a statement of the facts of the case from the record, which in this case contains five volumes spanning almost ten years of litigation.

When a party fails to substantially comply with the appellate rules, the penalties may include the following:

> (1) A deficiency notice or order directing a party to take specific action,
>
> (2) A show cause order,
>
> (3) Striking of filings, briefs, record or portions thereof,
>
> (4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,
>
> (5) A dismissal of the appeal or denial of the motion for discretionary review, and
>
> (6) Such further remedies as are specified in any applicable rule.

RAP 10(B).

Because *pro se* pleadings "are not required to meet the standard of those applied to legal counsel[,]" *Beecham v. Commonwealth*, 657 S.W.2d 234,

236 (Ky. 1983), we will not adopt any of these measures. We will, however, rely primarily on the statement of the case presented in the appellee's brief, supplemented by our own review of the record. Joshua has not filed a reply brief raising any objections to the appellee's summary of the facts and procedural history of the case.

## FACTUAL AND PROCEDURAL BACKGROUND

Joshua and Ashley M. Cooley were married in 2009. They have two children, a daughter born in 2010, and a son born in 2017. A domestic violence order ("DVO") was entered against Joshua by the Boyle Family Court on April 23, 2016, after Joshua grabbed Ashley by the neck and threw her to the ground. The episode was witnessed by their daughter. As a result of this incident, Joshua entered a guilty plea to a charge of assault in the fourth degree, and a dependency, neglect, and abuse ("DNA") petition was filed against him in Boyle Family Court. He stipulated to neglect of his daughter on December 5, 2016.

Joshua thereafter violated the terms of the DVO when he went to Ashley's home and beat on her car, yelling and screaming. As a result, he pleaded guilty to violating the DVO on August 17, 2016, and served thirty days in county jail.

Meanwhile, on July 19, 2016, Ashley filed a petition for dissolution of marriage. A decree of dissolution was entered on July 28, 2017. A partial

settlement agreement provided for joint custody of the children, with Ashley designated as the primary residential custodian.

On June 15, 2018, the family court entered an order finding Joshua in contempt of court for failing to pay child support. He was found to have an arrearage of $2,893.48. A bench warrant was issued for his arrest, and he was ordered to serve 179 days in county jail. The court also found that Joshua's conduct towards his daughter, which included discussing adult issues with her, was spiteful and retaliatory, and likely to endanger the emotional and mental well-being of the children. Thus, the court ordered timesharing to be at the sole and complete discretion of Ashley as to time, place, and duration.

A new DNA petition was filed against Joshua, alleging that his daughter witnessed domestic violence between Joshua and his girlfriend in September 2019. The incident also resulted in criminal charges being filed against Joshua in Bourbon Circuit Court.

On May 20, 2021, the family court entered an order finding that Ashley had presented clear and convincing evidence that Joshua had a propensity for violence and a longstanding history of perpetrating violence on Ashley, with an adverse effect on the children. The court directed his visitation to be supervised by the children's paternal grandparents. After the entry of this order, Joshua was incarcerated for some time.

In August 2022, Ashley moved to Florida with the children to take a job as a travel nurse. She did not notify Joshua or the court of the relocation.

In May 2023, Joshua filed a *pro se* affidavit seeking timesharing. The family court scheduled a hearing. Joshua retained counsel and filed a motion on June 21, 2023, asking the court to issue an order for the children to be returned to Boyle County immediately. He sought to have Ashley held in contempt for relocating the children without notice, in violation of the Family Court Rules of Procedure and Practice ("FCRPP"). He also sought an equal parenting time schedule and lifting of the supervised parenting time restriction. Ashley filed a motion seeking sole care and custody of the children. She claimed that the children were terrified of Joshua and that she relocated to Florida when he was released from jail.

The family court agreed that Ashley had violated the FCRPP by failing to give notice of moving with the children to Florida and ordered her to pay Joshua's attorney's fees of $837.50. It denied Joshua's request to have the children returned to Kentucky and appointed a Friend of the Court ("FOC") to determine the wishes of the children. It recommended Joshua engage in Reconciliation Therapy with the children and directed him to take action to set up the therapy. It granted Joshua timesharing from July 28, 2023 to August 4, 2023.

On January 9, 2024, the Bourbon Circuit Court entered an expungement order relating to the criminal charges stemming from the domestic violence incident between Joshua and his girlfriend that was witnessed by his daughter.

The family court conducted a hearing on March 29, 2024, addressing multiple issues regarding custody, and timesharing. Ashley's attorney prepared an order reflecting the agreements the parties had reached on some issues and the family's court's rulings on the contested issues. Joshua was represented by counsel at the hearing and his counsel indicated that he had seen and approved the order prepared by opposing counsel by signing "have seen" on the document. The order was entered on April 12, 2024, granting Ashley sole care, custody and control of the children. To support this modification of custody, the family court cited the DVO entered against Joshua in 2016; his further violations of the DVO; and the juvenile petitions filed in regard to the daughter. The court acknowledged that the second DNA case was dismissed but found that it contained information relevant to determining the daughter's best interests in the custody case. The family court also referred to the criminal case that had been brought against Joshua in Bourbon County, involving violence against a third party. The court acknowledged that it had been resolved in Joshua's favor but further stated there was still evidence before the court of domestic violence involving a third party.

The family court found that Joshua did not seek Reconciliation Therapy with his children as the court had recommended. Joshua refused on the grounds that it would be difficult because Ashley and the children were out of state, but the court noted that virtual therapy was prevalent and could have been used. The family court also found that Ashley had moved to Florida without giving adequate notice to Joshua and that the court had previously ordered her to reimburse Joshua's attorney's fees.

The court concluded that custody should be modified because the parties were unable to communicate or co-parent. Joshua was awarded supervised timesharing comprised of one week in June and one week in July.

About two months later, on June 25, 2024, Joshua filed an affidavit with the court stating that the summer timesharing agreement did not accurately reflect the agreement of the parties at the March 29, 2024, hearing. He explained that it was intended to be one week in June and two weeks in July, but the court order omitted one week. The family court set the matter for a hearing as provided by Kentucky Rules of Civil Procedure ("CR") 60.02 and 60.01. Joshua then filed another document seeking to hold Ashley in contempt and requesting additional modifications to the April 12, 2024, order. The family court reviewed the record and determined that Joshua was correct regarding the July visitation schedule. It

subsequently entered an order amending the April 12, 2024, order to reflect that Joshua would receive two weeks of visitation in July.

The remainder of Joshua's claims were addressed at a hearing on September 2, 2024. The family court thereafter entered an order on September 27, 2024, addressing numerous issues. It denied Joshua's motion for immediate return of the children and for "make up" timesharing, due to his own lack of compliance with the timesharing order and his failure to demonstrate efforts on his part to effectuate the missed timesharing. It specified that Joshua was to have scheduled phone contact with his son; it stated that Stephanie Cooley, the paternal grandmother, could supervise timesharing provided Kevin Cooley, the paternal grandfather was not present. Otherwise, Tracy Carroll[2] was to be present to supervise timesharing and there would be no restriction on Kevin Cooley's presence if Ms. Carroll was supervising timesharing. It provided for Joshua to have timesharing beginning at the conclusion of school on Tuesday, November 26, 2024, concluding on Sunday, December 1, 2024. The parties were ordered to mediate all outstanding issues with the family court mediator.

On January 13, 2025, Joshua filed a motion to modify the custody order entered on April 12, 2024. He sought joint custody and for the court to

---

[2] A careful review of the record provided no explanation as to who Tracy Carroll is or why she would be identified as an individual to provide supervision during timesharing with the children.

designate Ashley as the non-custodial parent. He alleged that Ashley had moved to a new address in Florida without notifying him. He also alleged that her boyfriend was violent, abusive, had a criminal record, and presented a danger to the children. He also filed a motion requesting the court hold Ashley in contempt.

Ashley filed a motion to hold Joshua in contempt. He filed a response asking, among other things, for the children to be returned to Kentucky.

On February 2, 2025, the family court entered an order denying the motion to modify custody.

On February 12, 2025, Joshua once again filed a motion to modify the order entered on April 12, 2024. According to Joshua, the purpose of this motion was to request the court to include omitted orders and mutual agreements entered on the video record on March 29, 2024, and to correct the order to accurately reflect the video record.

The motion requested over seventeen changes and deletions to be made to the original order. It requested two weeks in July for timesharing and visitation during the timeshare which he would work out with Tracy Carroll. The motion acknowledges that the family court had already entered an order to include two weeks of visitation in July. The motion made the following additional requests: (1) to include Spring Break 2025 for visitation with the children; (2) to add language stating that custody has nothing to do with how much time the parent

spends with the children and that everyone preserves their parental rights; (3) that both parties agree to have access to information concerning the children's medical and educational records; (4) that regardless of custody, both parties agree they will have equivalent decision-making authority regarding major medical care and religious issues; (5) that the court will recommend Reconciliation Therapy for Joshua and the daughter and that the daughter will participate if Joshua sets it up; and (6) that even if she is the sole custodian, Ashley is required to notify Joshua, as if they were joint custodians, if she seeks to relocate the children anywhere and to keep him informed of their current address and phone number. The motion also sought to delete provisions of the order relating to supervision of visitation and the role of Tracy Carroll, and to delete the provision that the children have their phones with them at all times during timesharing and have access to the FOC's phone number to contact him at any time. The motion also requested the court to honor and enforce the expungement order of the Bourbon Circuit Court, dated January 9, 2024.

Joshua also filed a second motion, pursuant to Kentucky Revised Statute (KRS) 431.076, which relates to expungement of criminal records. He again requested the Boyle Family Court enforce the expungement order and remove the Bourbon County charges from the family court records. He sought to

stop any testimony or hearsay about the charges in the family court proceedings on the grounds they had been expunged and deemed never to have happened.

On February 28, 2025, the family court entered an order granting in part and denying in part the motion to alter, amend, or vacate the April 12, 2024, order, and denying the expungement motion. The family court noted that Joshua's counsel had indicated that the April order reflected the agreement of the parties and the rulings of the court by signing "have seen" on the document. The court reviewed the complicated procedural record of the case, and the multiple motions filed by Joshua since the October 2024 hearing. It thereafter addressed seventeen of Joshua's claims to amend or delete portions of the April order and noted that it had already clarified aspects of the order in its order entered on September 27, 2024. The court refused to make any further amendments or deletions on the grounds that they were without merit or had already been addressed. The court further pointed out that it was Joshua's second motion to alter, amend, or vacate the April order and there was no compelling reason to allow him a "second bite" at the apple. The court also denied the motion to expunge on the grounds that the allegations underlying the criminal charges in Bourbon County could still be used in assessing the best interests and protection of the children in the civil case.

This appeal followed.

## STANDARD OF REVIEW

The family court treated Joshua's motion to alter, amend, or vacate as one brought under Kentucky Rules of Civil Procedure (CR) 60.02, which permits relief from judgment, and CR 60.01, which permits the correction of clerical mistakes. We review the trial court's denial of a motion pursuant to CR 60.02 or CR 60.01 under an abuse of discretion standard. *White v. Commonwealth*, 32 S.W.3d 83, 86 (Ky. App. 2000); *Aurora Loan Services v. Ramey*, 144 S.W.3d 295, 299 (Ky. App. 2004). An abuse of discretion occurs when a "trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ANALYSIS

Joshua raises three arguments: (1) the family court unlawfully denied his motion of February 12, 2025, to alter, amend, or vacate the order entered on April 12, 2024; (2) the family court unlawfully denied his February 12, 2025, motion to enforce the order of expungement from Bourbon Circuit Court under KRS 431.076; and (3) the family court infringed on his rights to know the location and whereabouts of his children.

**(1) The family court did not abuse its discretion in denying the motion to alter, amend, or vacate**.

On appeal, Joshua argues that the family court acted unlawfully in denying his CR 60.02 motion. He disputes the family court's statement that it was

-13-

his second motion to alter, amend, or vacate, and contends he should not be bound by his attorney signing "have seen" on the April 2024 order.

The record shows that Joshua filed a motion on January 13, 2025, to modify the custody order of April 12, 2024. He then filed the motion to alter, amend, or vacate the same order on February 12, 2025. Although the January motion was not formally styled a motion to alter, amend, or vacate, it sought the same type of relief. "[O]ur emphasis remains on substance over style." *Lassiter v. American Exp. Travel Related Services Co., Inc.*, 308 S.W.3d 714, 718 (Ky. 2010). Successive motions pursuant to CR 60.02 are frowned upon and Joshua does not explain why he waited ten months before filing the motion to alter, amend, or vacate. In the intervening period he filed other motions seeking to hold Ashley in contempt and seeking to modify the timesharing arrangement. The family court nonetheless addressed every issue raised in the February 2025 motion. Joshua provides no reason whatsoever that the family court's resolution of these issues was erroneous; he merely argues that the family court should have granted his motion but does not explain why.

Joshua also objects to the court's reference to his attorney signing "have seen" on the April 12, 2024, judgment. A client is bound by the acts of his attorney, even if those acts were negligent, because the attorney was acting within the scope of his duties as the client's agent. *Herfurth v. Horine*, 266 Ky. 19, 98

-14-

S.W.2d 21, 23 (1936); *Douthitt v. Guardian Life Ins. Co. of America*, 235 Ky. 328, 31 S.W.2d 377, 379 (1930). Joshua appears to have been aware of his attorney's alleged shortcomings as early as June 25, 2024, yet never moved to correct any parts of the order except the summer timesharing provision – which the family court promptly amended.

Next, Joshua argues that the family court erred in denying his motion to enforce the order of expungement from the Bourbon Circuit Court. The expungement statute states in pertinent part:

> An order of expungement pursuant to this section shall expunge all criminal records in the custody of the court and any criminal records in the custody of any other agency or official, including law enforcement records, but no order of expungement pursuant to this section shall expunge records in the custody of the Department for Community Based Services. The court shall order the expunging on a form provided by the Administrative Office of the Courts. Every agency, with records relating to the arrest, charge, or other matters arising out of the arrest or charge, that is ordered to expunge records, shall certify to the court within sixty (60) days of the entry of the expungement order, that the required expunging action has been completed. All orders enforcing the expungement procedure shall also be expunged.

KRS 431.076(4).

> After the expungement, the proceedings in the matter shall be deemed never to have occurred. The court and other agencies shall delete or remove the records from their computer systems so that any official state-performed background check will indicate that the records do not exist. The court and other agencies shall

reply to any inquiry that no record exists on the matter. The person whose record is expunged shall not have to disclose the fact of the record or any matter relating thereto on an application for employment, credit, or other type of application.

KRS 431.076(6).

The family court did refer to the criminal case in its order, acknowledging that it had been resolved in Joshua's favor, and further stated that there was still evidence before the court of domestic violence involving a third party. The court stated that it was the criminal charge in Bourbon County that was expunged, "not any of the alleged facts and circumstances under which that charge was brought. In other words, testimony regarding the allegations under which the Bourbon County criminal case was brought cannot and should not be excluded from a consideration regarding the best interests and the protection of these children in this civil case."

A criminal proceeding necessarily begins with the filing of a formal complaint or charge. Thus, the expungement statute encompasses the records and legal consequences generated by that proceeding. It does not, however, erase the underlying facts that existed independent of the criminal case itself.

Accordingly, an expungement would preclude testimony derived solely from the expunged proceeding or its records. Individuals whose knowledge of the events is based exclusively upon those records could not testify regarding

-16-

them.  KRS 431.076, however, does not bar otherwise admissible testimony from witnesses who possess independent personal knowledge of the underlying events. Those facts exist regardless of whether criminal charges were ultimately filed and regardless of the outcome of any resulting prosecution.

Thus, a witness with firsthand knowledge of the conduct that led to a criminal charge would not be prohibited from testifying about that conduct, provided the testimony is otherwise admissible under the Kentucky Rules of Evidence.  As one treatise explains, "[a]n expungement order does not preclude witnesses who have knowledge independent of the expunged record from testifying."  24 C.J.S. *Criminal Procedure and Rights of Accused* § 2173. Likewise, the Tennessee Court of Appeals has recognized the distinction between the underlying conduct and the legal consequences arising from that conduct: "The key point is the distinction between the underlying acts, which are not erased by expungement, and the legally operative facts resulting from those acts . . . which are erased by expungement and cannot be considered." *Wright v. Tennessee Peace Officer Standards and Training Comm'n*, 277 S.W.3d 1, 13 (Tenn. Ct. App. 2008).  Because KRS 431.076 does not bar consideration of underlying facts and circumstances known through sources independent of the expunged criminal proceeding, the family court did not err in considering testimony from witnesses

who had independent knowledge of the conduct giving rise to the expunged proceedings or the juvenile proceeding that was based on the conduct.

Moreover, our review of the record indicates that the family court's decisions regarding custody and timesharing were based primarily on other substantial evidence in the record. CR 61.01 provides that "[n]o error in . . .the admission . . . of evidence . . . is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." The record is replete with other evidence relied upon by the family court, such as the previous DVO, his violation of the DVO, and the DNA actions in 2016; his conduct towards his daughter; his failure to pay child support; and his failure to engage in Reconciliation Therapy as directed by the court. Any error committed by the court in relying on the evidence underlying the Bourbon Circuit Court case was harmless and not grounds for reversal.

Finally, Joshua argues that the family court infringed on his rights to know the location and whereabouts of his children. The family court initially ordered Ashley to notify Joshua in the event of her relocation and to inform him of her current address and phone number. The court later determined that Ashley was entitled to invoke Kentucky's Safe at Home Program because she had previously obtained a DVO against Joshua, which he violated. The Safe at Home Program

-18-

was established within the Office of the Secretary of State with the intent to protect victims of domestic violence, human trafficking, stalking, sexual assault, rape, and other sexual crimes. KRS 14.302. The Program authorizes the use of designated addresses for victims, their minor children and other individuals residing with the victim. KRS 14.302(3). A victim of domestic violence "may apply to the Secretary of State to have an address designated as his or her mailing address in place of his or her residential address[.]" KRS 14.304(1).

Ashley argues that Joshua can contact her through her attorney and that electronic communications between the parties are permitted.

Joshua does not dispute the family court's finding that Ashley is a victim of domestic violence who qualifies to keep her address confidential under this program. He does not provide a citation to the record to indicate where his argument that the Safe at Home Program infringes on his rights was raised before the family court. If Joshua wishes to challenge the constitutionality of the program, he cannot do so for the first time on appeal. "A new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999).

## **CONCLUSION**

For the foregoing reasons, the family court's order of February 28, 2025, is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Joshua Cooley, *pro se*
Harrodsburg, Kentucky

BRIEF FOR APPELLEE:

William Roberts Erwin
Danville, Kentucky